McBRIDE, Judge.
Plaintiff, invoking the provisions of the-so-called Sharecroppers Act, No. 298 of 1938, LSA-R.S. 13:4911 et seq., seeks the eviction of defendant from what is referred to by. counsel as a storeroom which is the rear portion of a shed located upon the present Lot L, in Square 606 of the *695 Sixth District of New Orleans. Plaintiff is the owner of the mentioned lot and shed. From a judgment condemning her to vacate ■the premises, defendant has appealed.
There was never at any time a written or verbal lease or any other type of contractual agreement or understanding relative to defendant’s use thereof.
The defenses are: (1) that the mother of the parties by having erected on what is ■now plaintiff’s property, some time prior to 1940, the shed or storeroom in contest and used it until her death, made a destination ■du pere de famille in favor of her adjoining property on which she operated a retail business; or, alternatively, (2) that defendant acquired, by the prescription of -ten years, a servitude to use the storeroom in connection with her business which she, like her mother, carried On in the building on the adjoining lot. It is defendant’s -contention that she is. entitled to be maintained in possession of the storeroom either under the alleged destination du pere de famille or the prescriptive servitude.
First, let us say th,at.Mrs. Maria Scla-fani, the mother of the parties who is now ■deceased, owned original Lots 1 and 2 of ■Square 606; in a building located on Lot No. 1 she conducted a grocery and meat ■market, and in connection with her activities caused to be erected the shed or storeroom on the adjoining Lot 2. The building •on then Lot 1 which was and is used as the store is separated from the shed or storeroom on Lot 2 by an alley which runs along the side of Lot 1 and has a width of 3 feet ■6 inches. Mrs. Sclafani elevated the surface of the alley to a height even with the floor of the store building to facilitate convenient passage across the alley from the •store building to the storeroom.
Mrs. Maria Sclafani used both buildings in her commercial endeavors up until the time of her death. It appears that about mid-year 1939 she decided to execute •a last will and testament, but’before doing so she commissioned a firm of-surveyors to lay out Lots 1 and 2 (together with another lot with which we are not concerned) and to make a sketch thereof. This was done by the surveyors who subdivided .the total area of original Lots 1 and 2 into two lots which they designated anew as “K” and “L.” According to this sketch,, Lot “K” embraces the whole of the original Lot 1 plus a small strip along' its side adjoining original Lot 2. The present Lot L consists of the remainder of original Lot 2. The sketch of survey shows no building encroachments on either lot and a surveyor testified that the shed and storeroom building is located entirely on plaintiff’s Lot L.
In the succession proceedings ’of Mrs. Sclafani, who died in 1940, the Civil District Court for the Parish of Orleans recognized both plaintiff and defendant’ as the children and legatees of decedent and as such sent them into possession, respectively, of Lots L and K in accordance with the bequests contained in the decedent’s will. The lots were described in the judgment according to “certificate of survey by Gilbert & Kelly, Surveyors, dated June 6, 1939, copy of which is annexed hereto and made a part hereof.” It may'be conceded that the defendant, who inherited Lot K on which the store building is located, without protest from plaintiff, has since her mother’s death continued to operate the business therein and has in connection therewith continued to utilize the storeroom on Lot L just as Mrs. Sclafani had done before her death.- . ■
We cannot perceive any merit at all in the defenses tendered by appellant. We are unaware of any statutory provision or jurisprudence in this state which is authority for the proposition that Mrs. Sclafani’s use of the storeroom on her adjoining lot in conjunction with her business had the effect of a destination du pere de famille so as to grant the present owner or occupant of the improvements on Lot K the right to the use and possession of the storeroom on plaintiff’s lot. It seems to us that all' that the former owner of both lots did and intended to do was to use the two buildings for her *696 personal convenience and welfare in her business affairs.
A real or predial servitude is a charge laid on an estate for the use and utility of another estate belonging to another owner. LSA-C.C. art. 647. The destination made by an owner is equivalent to title with respect to continuous apparent servitudes. By destination is meant the relation established between two immovables by the owner of both which would constitute a servitude if the two immovables belonged to two different owners. LSA-C.C. art. 767. No charge was laid by Mrs. Sclafani on Lot L, and it is entirely reasonable to suppose that she never intended that after her death the owner or occupant of Lot K would have the right to make use of the building on the adjoining Lot L, hence her having caused the subdivision and redistribution of the area of the two original lots in contemplation of death.
However, should we be in error in holding that there had been no destination du pere de famille under LSA-C.C. art. 767, then in that event we believe that whatever servitude there was terminated on April 29, 1940, upon the rendition of the judgment in Mrs. Sclafani’s succession which sent the respective parties into possession of the two lots in accordance with the survey. Any servitude that may have theretofore existed in favor of Lot K and against Lot L was effectively abandoned by the defendant when she accepted Lot K as it is shown on the sketch and described in the judgment of possession. See Carlon v. Marquart, La.App., 10 So.2d 246, decided by this court.
The Civil Code provides that servitudes are either continuous or discontinuous.
Art. 727 reads:
“Servitudes are either continuous or discontinuous.
“Continuous servitudes are those whose use is or may be continual without the act of man.
“Such are aqueducts, drain, view and the like.
“Discontinuous servitudes are such as need the act of man to be exercised.
“Such are the rights of passage, of drawing water, pasture and the like.”
If there possibly be anything known to our law as a servitude of use of another’s building on an adjoining estate, such servitude could only be a discontinuous one which can be likened to the examples of discontinuous servitudes given in the above-quoted codal article and which need the act of man to be exercised.
Thus, there could be no destination made by the owner, as it is provided in the Code that the destination of the owner is equivalent to title only with respect to continuous apparent servitudes. LSA-C.C. art. 767; Burgas v. Stoutz, 174 La. 586, 141 So. 67.
Appellant’s alternative contention that there has been created in her favor by the operation of ten years’ prescription a servitude of use of the storeroom is as equally untenable. If there is such a type of servitude as defendant claims, as said before, it could be classed only as a discontinuous servitude which cannot be acquired by the running of prescription.
LSA-C.C. art. 766 provides:
“Continuous nonapparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title.
“Immemorial possession itself is not sufficient to acquire them.
“Immemorial possession is that of which no man living has seen the beginning, and the existence of which he has learned from his elders.”
See, also, Ogborn v. Lower Terrebonne Refining & Mfg. Co., 129 La. 379, 56 So. 323.
*697 Appellant also advances the argument that the trial judge erred in not sustaining the exception of no cause of action, which is based on the premise that LSA-R.S. 13 :4911 et seq., was not available to plaintiff under the circumstances of the case and that the only remedy open to her was the petitory action.
We think that the remedy exercised by plaintiff was a proper one; she was not relegated to the cumbersome peti-tory action. The exception was correctly overruled.
The petition filed by plaintiff alleges that the defendant has used, occupied and possessed the premises “all through the permission and accommodation” of plaintiff. LSA-R.S. 13:4911 and 13:4912 read as follows:
“When any share-cropper, half hand, day laborer, or any occupant of land holding through the accommodation of the owner, or any other occupant other than a tenant or lessee, shall be in possession of any house, building or landed estate, after the purpose of such occupancy and possession shall have ceased and terminated, whether for reason of breach or termination of contract, or otherwise, and the owner of such house, building or landed estate so occupied and possessed, or his agent, shall desire to obtain possession of the premises, he shall demand and require in writing such occupant or possessor to remove from and leave the same, allowing him five calendar days from the day such notice is delivered.”
“If the occupant or possessor, whether he be a sharecropper, half hand, day laborer, occupant of premises through the accommodation of the owner, or occupant other than a tenant or lessee, shall refuse to comply with the notice, after the expiration of such delay, and to remove from the premises, the landowner may cause the occupant or possessor to be cited summarily to show cause, within two days after service of such rule, before any court of competent jurisdiction, why he should not be condemned to surrender the possession of the premises so occupied and possessed.”
In touching upon the scope and operation of the Sharecroppers Act, the court said in Clements v. Billiot, La.App., 52 So.2d 268, 269:
“ * * * ‘In effect the law covers every occupancy of premises, other than that involving the relationship of landlord and tenant, where the occupant occupies the property of another, not as owner. It permits the owner to evict the occupant holding through his accommodation, whenever he desires.’ ”
The pith of defendant’s contention is that in view of the defense that defendant is holding the property under a destination du pere de famille or servitude “this is not the type of lawsuit which can be solved or adjudicated equitably under a summary proceeding such as provided by the Sharecroppers Act.”
The defense raised by defendant in answer did not have the effect of stripping plaintiff of the right to proceed in a summary manner under the statute. It seems to us that what defendant urges, if successful, would have the effect of nullifying the speedy remedy of the statute, since every defendant in an action thereunder could urge defenses based on claims of title howsoever unfounded and remote of proof and demand the right to contest the issues of the case in a petitory action.
The defenses made here could be fully heard and adjudicated in such an action as plaintiff brings, and if the defendant had proven her right to be maintained in possession, the plaintiff would have suffered the penalty of having her suit dismissed. The defendant was not barred by virtue of the summary nature of the case from *698 asserting the proffered defense. See Wooten v. Jones, 200 La. 333, 8 So.2d 46.
Unfortunately for defendant, however, she has, not established her claims and plaintiff must prevail.
The judgment appealed from is affirmed.
Affirmed.