DOMENGEAUX, Judge.
In the year 1949 plaintiff granted defendant a servitude over a tract of land containing 22.76 acres by a written instrument, the relevant part of which was couched in the following terms:
“I moreover give and grant to said Levee Board full acquittance, release and discharge from any and all liability to me for any lands and improvements used, or destroyed, and any and all damage that has been caused, or will be caused, my said property by the building of the U. S. Bouef Cocodrie Diversion Channel Canal/Levee, giving and granting to said Levee Board, its successors or assigns, the right to use all or any part of the above described property for any purpose with, or connected with construction or excavation of canals or ditches, storage or placement of spoil or spoil dirt, storage or placement of any and all machinery and/or equipment, irrigation, storage or empounding of water, levee construction or relocation and flood control or anything incidental thereto.”
In consideration of the release clause therein contained plaintiff received the sum of $4,738.00.
Pursuant to its rights, defendant constructed a large drainage canal known as the Bayou Bouef-Cocodrie Diversion Canal, which encroached upon the western edge of plaintiff’s land but did not cover the entire tract granted in the servitude.
On December 16, 1969, plaintiff, alleging that defendant had failed to use a substantial portion of the servitude granted it, filed suit to cancel the servitude and in the alternative, to cancel it insofar as it affected the portion of his property lying without the banks of defendant’s canal. Following a trial on the merits judgment was rendered in favor of plaintiff restricting defendant’s servitude to the drainage canal that it had constructed and an area extending a distance of 100 feet from the east bank of the canal into plaintiff’s property and running longitudinally along said bank. The defendant’s servitude rights were limited to those necessary to the construction and maintenance of drainage facilities *300 through and across the area specified, and beyond that were declared to have been lost by prescription. Defendant then perfected an appeal to this court and plaintiff answered the appeal asking that defendant’s servitude rights be confined within the banks of the canal.
We first consider the nature of the servitude herein granted, i.e. the right to construct and maintain canals, ditches, and levees, and all rights accessory thereto.
We are told by article 727 of the current Civil Code of Louisiana that:
“Servitudes are either continuous or discontinuous.
Continuous servitudes are those whose use is or may be continual without the act of man.
Such are aqueducts, drain, view and the like.
Discontinuous servitudes are such as need the act of man to be exercised.
Such are the rights of passage, of drawing water, pasture and the like.”
As in France under Article 688 of the Napoleonic Code, the “act of man” test is the criterion whereby servitudes are classified as being continuous or discontinuous in Louisiana. In interpreting that phrase, our jurisprudence has consistently held that acts of man required to regulate the flow of water through ditches or canals do not destroy the continuous character of the servitude of drain or aqueduct as the .servitude remains “ . . . ‘continual without the act of man’ in the sense that it may be used uninterruptedly without the act of man.” Wild v. LeBlanc, La. App., 191 So.2d 146. Acadia-Vermilion Rice Irrigating Co. v. Broussard, La.App., 175 So.2d 856.
The servitude of drain is defined by Civil Code Article 714 as being “ . . . the servitude of passing water collected in pipes or canals through the estate of one’s neighbor.” Article 724 states that:
“The conducting of water or aqueduct is the right by which one conducts water from his estate through the land of his neighbor by means of an aqueduct or ditch.”
Whether the servitude involved here be one of drain or aqueduct is however, in view of our conclusion, academic, since both are considered as continuous servitudes under the jurisprudence and specifically by Civil Code Article 727. We therefore conclude that the defendant was granted a continuous servitude. State ex rel. Wood v. Pinder, La.App., 41 So.2d 479.
Plaintiff argues that defendant has used but a small portion of the land area included in the original servitude grant and that its failure to utilize the remainder during the preceding ten years has resulted in its loss under Civil Code Article 798. That provision of our law reads thusly:
“If, on the contrary, the owner has enjoyed a right less extensive than is given him by his title, the servitude, whatever be its nature, is reduced to that which is preserved by possession during the time necessary to establish prescription.”
Admittedly defendant has not constructed canals or other works over the entire area covered by the servitude, and Article 798, standing alone, seems to indicate the correctness of plaintiff’s position. That article, however, may not be read alone but instead must be considered in conjunction with the other provisions of our law touching on the topic.
Of particular significance are Articles 790 and 791 of the Civil Code which provide as follows:
“The time of presciption for non-usage begins for discontinuous servitudes, from the day they ceased to be used; for continuous servitudes, from the day any act contrary to the servitude has been committed.”
“Acts contrary to the servitude are the destruction of works necessary for its *301 exercise; as the stopping of spouts which carry off rain, or of windows or apertures which are necessary to the exercise of the right of view.”
Article 798 states that the servitude which is not used in totality is reduced to the portion possessed “during the time necessary to establish prescription.” Article 790 provides that the time of prescription begins to run for continuous servitudes (which we have already decided the one before us to be) only “ . . . from the day any act contrary to the servitude has been committed.” Finally Article 791 tells us that acts contrary to the servitude are the destruction of works necessary for its exercise. No such acts were either alleged or proved at the trial of this cause, and hence it follows that prescription has not begun to run against the defendant.
Plaintiff cites two cases in support of his contention that Article 798 of the Civil Code is applicable to this case.
The first of these, Bell v. Tycer, La. App., 97 So.2d 448, involved the abandonment of a portion of a public road by the parish Police Jury. Therein the court applied Article 789 of the Civil Code and decided that the Police Jury, by not using a portion of a road for 10 years, had lost its servitude on the unused portion. The servitude involved was one of passage, a discontinuous servitude which under the provisions of Civil Code Article 790 begins to prescribe on the day that it is last used. Accordingly that case has no bearing on the one now before us.
The second case cited is Columbia Gulf Transmission Co. v. Fontenot, La.App., 187 So.2d 455. The servitude involved therein was for the construction of pipelines and was granted in 1953 by an instrument containing, inter alia, the following language:
“ ‘In the event Grantee desires to change or alter the route under, upon, over and through the property above described, from that shown on the annexed plat, or desires to construct any additional line or lines, even on the right of way conveyed herein, which right is specifically granted herein, then Grantee will pay therefor to Grantor the sum of One and no/100 ($100) Dollars per lineal rod, together with any and all damages resulting to Grantor’s property as a result of said change, alteration or additional construction.’ ”
Columbia constructed one pipeline along the 66-foot right of way and then, more than ten years later, sought to build an additional line beyond the original right of way under the above quoted provision. This court concluded:
“ . . . that plaintiff’s failure to construct any additional lines during a ten year period constituted a use less extensive than that given plaintiff by its title, within the purview of LSA-C.C. Articles 796 and 798. Consequently, plaintiff has lost by prescription any rights it had under the 1953 agreements to construct additional lines.”
The servitude involved in that case was for the construction and use of a pipe line for the transmission of hydrocarbons. Unlike the servitudes of drain or aqueduct, which operate, once the flow of water is started, by the force of gravity, the transmission of natural gas through pipelines requires the constant application of pressure. If pressure is discontinued the flow of gas ceases, hence it does not survive the act of man. In Acadia-Vermilion Rice Irrigating Co. v. Broussard, supra, we stated that we were in agreement with a passage from Aubry & Rau, Volume 8, p. 118, No. 248 quoted by our Supreme Court in Ogborn v. Lower Terrebonne Refining & Mfg. Co., 129 La. 379, 56 So. 323, as follows :
“Discontinuous servitudes are those which need the act of man to be exercised. What characterizes them is that their exercise does not survive the act of man; it ceases the moment this act ceases. Such is the servitude of way; it is exercised each time the owner of the *302 dominant estate passes over the servient estate, and only during the time occupied in his passing. The law cites as additional examples servitudes of drawing water of pasturing cattle.
“These servitudes continue to be discontinuous, notwithstanding that in order that they should be exercised certain apparent works have had to be established.
Thus the servitude involved in Columbia Gulf Transmission Co. v. Fontenot, supra, was under this rationale, of a discontinuous character. Gilfoil v. Greenspon, La. App., 216 So.2d 829. The case therefore has no relevance to the one at bar, wherein a continuous servitude is at issue.
We conclude therefore that the defendant herein is the owner of a continuous servitude which, because no acts contrary to it have been committed, has not prescribed. Accordingly we reverse the judgment of the district court and dismiss plaintiff’s suit at his costs in both courts.
Reversed and rendered.