344 So.2d 1111 (1977)
Cornelius Paul FOREMAN, Plaintiff-Appellee,
v.
Albert Jesse LUQUETTE et al., Defendants-Appellants.
No. 5860.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1977.
Louis M. Corne, Lafayette, for defendants-appellants.
McBride & Brewster by Robert R. McBride, Lafayette, for plaintiff-appellee.
Before CULPEPPER, WATSON and STOKER, JJ.
WATSON, Judge.
Plaintiff, Cornelius Paul Foreman, filed a rule to evict defendants, Albert Jesse Luquette and Esther Clostio, widow of Theodore Luquette, from certain property in Duson, Louisiana. Foreman's rule does not allege ownership of the property but merely recites that the purpose of the Luquettes' occupancy has ceased. The prior notice to vacate the property served on defendants states that the owner desires possession.
Defendants answered, alleging that Albert was owner of the property by transfer from Esther and that they lawfully occupy the premises. They also alleged fraud and forgery. The answer is verified by the oath of Albert Luquette.
*1112 Judgment was rendered by the trial court making the rule to evict absolute and ordering defendants to leave the premises. The Luquettes perfected this suspensive appeal.
The Luquettes contend that the trial court erred: in requiring the Luquettes to carry the burden of proof; in accepting the testimony of a single witness to overcome Mr. Luquette's disavowal of his signature on a non-authentic act; in determining the validity of an act of sale of the property from Luquette to Foreman based on comparison of the disavowed signature with other signatures of Luquette; and in holding that Esther Luquette was not entitled to continue to live on the premises after plaintiff Foreman admitted giving her a right of habitation.
The matter is a family dispute. The property was originally owned by defendant, Esther Clostio Luquette, the mother of Albert Luquette and mother-in-law of plaintiff Foreman. Albert Luquette acquired the property by deed from his mother dated April 4, 1973. (Court-1, TR. 11) In August of 1973, Albert moved to Houma, Louisiana. At approximately the same time, his mother, who had been living with him on the property, moved to Freeport, Texas. In evidence is an instrument dated April 15, 1974, by which Albert Luquette sold the property to Foreman (TR. 12). Albert denied that he signed a deed, although he admitted that the signature on the instrument looked like his and even might be his. The act of sale was recorded on the recited date of execution. Luquette was in Oklahoma at that time, according to his driver's log book for Younger Transportation, Inc. (D-1, TR. 18).
Foreman signed the deed on April 15, when he paid the Lafayette Building Association $945.31, the amount necessary to bring the notes on the property up to date. The additional recited consideration of $100 was not paid, although Foreman said he had previously given Albert more than that. He admitted there was no agreement between him and Albert about the $100. According to Foreman, Luquette had signed the deed at an earlier date and was not present on April 15, although Benoit, a witness, and Credeur, the notary, were present. This testimony was contradicted by Benoit who said he did not witness Foreman's signature. After Foreman acquired the property, he sent his mother-in-law a money order for $25 to enable her to move back to her home from Texas. Foreman told her that he had acquired the property for her and that she could remain as long as he could afford to keep her there. Both she and Albert have remained on the premises since that time. Foreman did not explain why he has now changed his mind.
Dallas A. Credeur, an officer of the Lafayette Building Association, testified that he was familiar with the transaction between Luquette and Foreman and identified his signature as Notary Public on the act of sale between them. Credeur testified from his loan records that Foreman bought the property by paying the installments for 10 months. Credeur further testified that he remembered Luquette coming in to sign the deed and Foreman signing on another date. The matter was primarily handled by collection officer Benoit, but Credeur said he knew and recognized Luquette at the time of execution.
Barbara Dugas, one of the two witnesses to the instrument, denied being present when Luquette signed it. Wilson Benoit, the other witness, also said she was not present. Benoit, although he witnessed Luquette's signature, said he was not present when Foreman signed at a later date. Benoit, a vice president and collection officer of the Lafayette Building Association, said he had tried to get Luquette to sell the property to his brother-in-law, since an independent sale was not possible because of judgments against Luquette. Benoit explained to Luquette that the property was being sold to his brother-in-law because Luquette was going to lose the property through foreclosure and had no alternative.
Esther Clostio Luquette testified that Foreman said he would hold the property for Albert until Albert.

*1113 ". . . could get back on his feet. . . and he also told me that I could live there the rest of my life, when he purchased the place." (TR. 75)
According to her, Foreman's promise was unqualified.
The trial court concluded that Luquette did in fact sign the instrument in question on the basis of comparing the signature with that in the pleadings, in the sale from his mother and on Luquette's driver's license. The court decided that the Luquettes had the burden of proof to prove fraud in the transaction; and had not carried that burden.
The first issue is whether plaintiff Foreman is entitled to use summary eviction procedure against the Luquettes.
The proceeding is one under LSA-C.C.P. art. 4702, which states:
"When an owner of immovable property wishes to evict the occupant therefrom, after the purpose of the occupancy has ceased, the owner, or his agent, shall first cause a written notice to vacate the property to be delivered to the occupant.
"This notice shall allow the occupant five days from its delivery to vacate the premises."
There has been no prior judgment in a petitory or possessory action determining the ownership of the property. Compare Avoca, Incorporated v. Singleton, 271 So.2d 630 (La.App. 1 Cir. 1972). Summary eviction procedure is not appropriate to try disputed title to property but is designed for situations where the possessor has no semblance of claim to title or possession. Clements v. Billiot, 52 So.2d 268 (La.App. 1 Cir. 1951). However, defendants have not objected to plaintiff's use of this procedure and the evidence as to the ownership of the property was therefore admissible. Wooten v. Jones, 200 La. 333, 8 So.2d 46 (1942). After remand, Wooten was tried on the merits as to fraud or misrepresentation in the sale of the property. See Wooten v. Jones, 205 La. 956, 18 So.2d 581 (1944).
The second issue is whether Esther Luquette has a right of habitation. A discontinuous servitude, which requires the act of man to be exercised, such as the right of habitation, can be established only by title, which is not present here. LSA-C.C. arts. 727,[1] 766[2]. Lovecchio v. Graffagnini, 90 So.2d 694 (La.App.Orl.1956), writ denied.
The third issue is whether the trial court correctly determined that plaintiff foreman is the owner of the property by virtue of the deed from Albert Luquette. The deed itself, although purporting to be an authentic act, was not executed in compliance with LSA-C.C. art. 2234 which states in pertinent part that:
"The authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in presence of two witnesses, . . ."
Here, there was no objection made to the parol evidence showing that the deed was not executed by either Luquette or Foreman in the presence of two witnesses. In view of the allegations of fraud by defendants, parol evidence was admissible to establish that the deed was not an authentic act. American B. & T. Co. In Monroe v. Carson Homes, Inc., 316 So.2d 732 (La., 1975). Since not an authentic act, the deed *1114 is not self proving under LSA-C.C. art. 2236.[3]
The trial court found the instrument valid, apparently as an act under private signature, after a factual determination that Luquette had in fact signed the deed to Foreman. Albert Luquette even admitted that the signature on the instrument might be his.
The trial court concluded that fraud was not proven, and thus, inferentially, that Foreman is the owner of the property. There is no manifest error in the conclusion that Foreman is the owner.
Therefore, the judgment of the trial court herein making the rule to evict absolute is affirmed. All costs are assessed against appellants.
AFFIRMED.
NOTES
[1] LSA-C.C. art. 727:

"Art. 727. Servitudes are either continuous or discontinuous.
Continuous servitudes are those whose use is or may be continual without the act of man.
Such are aqueducts, drain, view and the like.
Discontinuous servitudes are such as need the act of man to be exercised.
Such are the rights of passage, of drawing water, pasture and the like."
[2] LSA-C.C. art. 766:

"Art. 766. Continuous nonapparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title.
Immemorial possession itself is not sufficient to acquire them.
Immemorial possession is that of which no man living has seen the beginning, and the existence of which he has learned from his elders."
[3] LSA-C.C. art. 2236:

"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."